Tara HILL, individually, and on behalf of other members of the general public similarly situated

v.

EDDIE BAUER, a Washington corporation.

No. CV06–5224AHM(RCX).

United States District Court, C.D. California.

March 29, 2007.

---

Joseph Cho, Gregory Yu, Initiative Legal Group LLP, Los Angeles, CA, for plaintiff.

Kalia C. Petmecky, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, CA, for defendant.

CHAPMAN, United States Magistrate Judge.

## PROCEEDINGS: ORDER GRANTING, IN PART, AND DENYING WITHOUT PREJUDICE, IN PART, PLAINTIFF'S MOTION TO COMPEL AND GRANTING, IN PART, PLAINTIFF'S MOTION FOR SANCTIONS

On March 7, 2007, plaintiff filed a notice of motion and motion to compel further responses to plaintiff's request for production of documents Sets 1–6, to compel production of documents, and for an order of sanctions, a joint stipulation and the supporting declaration of Gregory Yu with exhibits, and defendant filed the opposing declarations of S. Adam Spiewak with exhibits, Kalia C. Petmecky, Mary Peltier, Misty Braa, and Vivian Gysler. On March 14, 2007, plaintiff filed its supplemental memorandum.

Oral argument was held before Magistrate Judge Rosalyn M. Chapman on March 28, 2007. Joseph Cho and Gregory Yu, attorneys-at-law with Initiative Legal Group LLP, appeared on behalf of plaintiff and Kalia C. Petmecky, attorney-at-law with the firm

Akin, Gump, Strauss, Hauer & Feld, appeared on behalf of defendant.

## BACKGROUND

### I

On June 15, 2006, plaintiff Tara Hill filed an individual and class action against defendant Eddie Bauer, a Washington corporation, and ten Does in the Los Angeles County Superior Court, raising several causes of action for violation of the California Labor Code, conversion and theft of labor, and unfair business practices in violation of California Business & Professions Code ("B.P.C.") §§ 17200, et seq. Defendant answered the complaint and raised numerous defenses, and on August 18, 2006, removed the action to this district court on the grounds of diversity of citizenship and under the Class Action Fairness Act. On February 14, 2007, plaintiff filed a First Amended Class Action Complaint, raising causes of action under the California Labor Code for unpaid overtime, improper wage statements, unpaid business related expenses, improper repayment of wages to employer, wages not paid upon termination, unpaid missed meal breaks, and unpaid missed rest breaks, conversion and theft of labor, and unfair business practices under B.P.C. §§ 17200, et seq. Defendant has not yet answered the First Amended Complaint.

### II [1]

■■■ Counsel for the parties held their Rule 26(f) conference on December 5, 2006. Shortly thereafter, on December 21, 2006, plaintiff served six sets of requests for production of documents upon defendant. Under Fed.R.Civ.P. 6(a) and (e), defendant's responses to plaintiff's document requests were due by January 25, 2007.[2] The parties entered into an agreement to allow defendant an extension of time to February 7, 2007, "to respond" to the requests for production of documents; however, the parties did not agree on what "to respond" meant. *See* Spiewak Decl. ¶¶ 4–5, Exhs. A–C. Rather, plaintiff intended the agreement to require defendant to make objections and to produce documents not objected to by February 7, 2007; whereas, defendant intended the agreement to merely require it to make objections to the requests by February 7, 2007.[3] In light of the parties' agreement, the Court finds defendant's objections, which were made on February 7, 2007, are timely and defendant did not waive its right to object to the requests by responding on February 7, 2007. Accordingly, the Court must consider the merits of defendant's objections.

As noted above, the parties did not reach an agreement on when defendant would produce responsive documents to plaintiff or whether any of the documents defendant would produce were to be protected. In fact, to date, defendant has produced only 13 pages of documents to plaintiff, and those documents pertain solely to plaintiff's individual claims. Further, defendant has not produced a privilege log to plaintiff and the parties have not entered into a protective order.

The discovery dispute before the Court focuses on 51 requests for production of doc-

1. In making the factual and legal determinations set forth in this part, the Court addresses the subissues the parties raise in their Joint Stipulation; however, the merits of plaintiff's motion to compel are discussed in Part III below.

2. It appears that in correspondence with defendant, plaintiff acknowledged that under the Federal Rules of Civil Procedure defendant's responses were due by January 25, 2007. *See* Spiewak Decl. ¶ 4, Exh. B. However, in the motion before the Court, plaintiff takes the inconsistent position that defendant's responses were due earlier, by January 23, 2007. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Klamath Siskiyou Wildlands Ctr. v. Boody,* 468 F.3d 549, 554 (9th Cir.2006) (citing *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001)). Here, it appears plaintiff has taken an inconsistent legal position regarding the date by which defendant's responses are due, *United States v. Lence,* 466 F.3d 721, 726 (9th Cir.2006), and the Court does not view favorably such a change in position.

3. It was not necessary for the parties to obtain the approval of the Court for them to agree to extend the date by which defendant was required to respond to the requests for production of documents to February 7, 2007, since that date did not affect any deadline set by Judge Matz.

uments. These requests can be divided into three general categories:[4] (1) documents pertaining to plaintiff's claims and defendant's defenses (Request nos. 3 & 53); (2) documents pertaining to defendant's employment policies, practices, and procedures (Request nos. 4–5, 11–17, 21–22, 24–27, 29–31, 35–40 and 44–49); and (3) documents pertaining to putative class members' hours, wages, business-related expenses, repayment of wages to employer, termination wages, meal breaks and rest breaks (Request nos. 6–10, 18–20, 23, 28, 32–34, 41–43 and 50–52). In response to almost each and every request for production of documents, defendant objected on the following grounds: "overly broad as to time"; "vague and ambiguous as to time"; "over broad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence"; seeks "confidential proprietary information prior to the issuance of a protective order"; "improper and premature because it seeks discovery related to the merits of the litigation and not to class issues"; "constitute[s] an unwarranted invasion of the person's constitutional, statutory, and common-law right of privacy in confidentiality"; and "protected by the attorney-client privilege and/or the work-product doctrine."[5]

## DISCUSSION

### III

█ Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D.Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998)). "Toward this end, Rule 26(b) is liberally in-

terpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id.* (citing *Jones v. Commander, Kansas Army Ammunitions Plant,* 147 F.R.D. 248, 250 (D.Kan.1993)). All discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Moon,* 232 F.R.D. at 635.

█ Rule 34 is one of the discovery tools available to litigants in the federal courts. *Keith H. v. Long Beach Unified School Dist.,* 228 F.R.D. 652, 655 (C.D.Cal.2005). It broadly provides that "[a]ny party may serve on any other party a request ... to produce ... any designated documents ... which are in the possession, custody, or control of the party upon whom the request is served[.]" Fed.R.Civ.P. 34(a). "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989). Thus, "[a] party responding to a Rule 34 production request ... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.' " *Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D.Ind.1992) (citation omitted); *A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 189 (C.D.Cal.2006). Here, plaintiff seeks to compel responses to all of its requests for production of documents.

█ As an initial matter, plaintiff has agreed that the time period covered by this litigation is from May 26, 2005, to the present. *See* Jt. Stip. at 28:10–12 ("Plaintiff has tentatively agreed to narrow the scope of discovery to dates subsequent to the May 25, 2005 Confirmation Order."). Thus, the Court finds no merit to defendant's objections of

---

4. In determining which requests fall into which category, the Court has made an independent determination, which places several requests in category (2) that defendant suggests belong in category (3).

5. Despite making general or boilerplate attorney-client privilege and work-product objections, de-

fendant represents it has not withheld any documents based upon attorney-client privilege or work product protection. Jt. Stip. at 24:10–11. The Court, thus, will not address these objections or whether a privilege log is required from defendant.

overbreadth, vagueness and ambiguity as to time, and these objections are overruled.

■ Document requests are relevant under Rule 26(b)(1) if they seek unprivileged information related "to the claim or defenses of any party...." Moreover, "[r]elevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005) (citation omitted). Although defendant has made a general or boilerplate relevancy objection to plaintiff's document requests, defendant has not provided any explanation at all why these requests are not relevant, *see*, e.g., *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable), and the Court finds all of plaintiff's document requests seek relevant information.

■ Defendant also objects to Category (2) document requests on the ground they seek "confidential proprietary information prior to the issuance of a protective order." Moreover, defendant admits withholding documents from plaintiff based upon its claim of confidential proprietary information, and has refused to turn over these documents without a protective order. *See* Spiewak Decl. ¶ 4, Exhs. A & B.[6] However, there is no absolute privilege for confidential information, *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587 (1979); *Hartley Pen Co. v. United States Dist. Court for the S. Dist. of Cal.*, 287 F.2d 324, 330 (9th Cir.1961); *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir.1981), although such information may be protected under Rule 26(c)(7). *In re Remington Arms Co., Inc.*, 952 F.2d

1029, 1031–32 (8th Cir.1991) (citations omitted). As the Eighth Circuit has commented:

In light of the protection afforded to trade secrets by Rule 26(c)(7), courts have attempted to reconcile the competing interests in trade secret discovery disputes. First, the party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. [¶] If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.

*In re Remington Arms Company, Inc.*, 952 F.2d at 1032 (citations omitted); *see also Hartley Pen Co.*, 287 F.2d at 330–31 ("We believe that the requirements of relevance and necessity must be established where disclosure of a trade secret is sought whether sought under Rule 33 or 34, and that the burden rests upon the party seeking disclosure to establish that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering disclosure.").

■ Here, defendant has failed to provide any declarations[7] or other evidence to support its claim that the documents responsive to Category (2) document requests are confidential proprietary information and that their "disclosure would be harmful to the party's interest in the property." *See Centu-*

---

**6.** It appears to the Court that defendant has intentionally delayed filing a motion for a protective order so it could refuse to produce relevant documents to plaintiff that plaintiff needs for her motion for class certification.

**7.** This failure is particularly glaring since defendant filed several declarations by its employees attesting to the burdensomeness of plaintiff's Category (3) document requests; yet, these declarations are silent regarding plaintiff's Category (2) document requests.

*rion Indus., Inc.,* 665 F.2d at 325 ("To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." (citation omitted)); *Creative Gifts, Inc. v. UFO,* 183 F.R.D. 568, 571 (D.N.M.1998) (conclusory arguments insufficient to establish requested documents are trade secrets and meritorious of confidential status and protection). Moreover, if defendant truly believes it has "confidential proprietary information" that should be protected by a protective order, it should have entered into a stipulated protective order with plaintiff or filed a motion for a protective order before the date by which it was to respond to plaintiff's Category (2) requests. *See,* e.g., *DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 690 (D.Kan.2004) (rejecting party's objection to request on confidential information ground when party had neither moved for protective order nor established documents contain confidential information or that disclosure would injure party or any other entity). Thus, defendant has not met its burden to show documents responsive to Category (2) document requests are "confidential proprietary information" and this Court is not prevented from requiring defendant to produce documents responsive to Category (2) document requests without a protective order.

■ Defendant objects to Category (3) document requests on several grounds. First, defendant claims these requests are premature because Judge Matz has limited discovery at this stage to class certification issues, and Category (3) document requests address the claims of putative class members. However, "wage and hour disputes (and others in the same general class) rou-

tinely proceed as class actions." *Prince v. CLS Transportation, Inc.,* 118 Cal.App.4th 1320, 1328, 13 Cal.Rptr.3d 725 (2004) (footnote omitted). In a recent opinion regarding class certification, the Ninth Circuit recognized that "[t]he party seeking [class] certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal–Mart, Inc.,* 474 F.3d 1214, 1224 (9th Cir.2007).[8] In showing that each of the four requirements of Rule 23(a) have been met, plaintiff must establish numerosity, commonality, typicality, and adequate representation. Certainly, the Category (3) document requests will assist plaintiff in showing numerosity. Similarly, since "[i]t is well established that commonality may be established ... through the use of statistical analysis[,]" *id.* at 1228 (citing *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 292 (2d Cir.1999), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000) and *Stastny v. S. Bell Tel. & Tel. Co.,* 628 F.2d 267, 278 (4th Cir.1980)), Category (3) document requests will also assist plaintiff in showing commonality. Thus, plaintiff's Category (3) document requests are not premature and are not precluded by Judge Matz's Order.

■ Additionally, defendant objects to Category (3) document requests on the ground of third-party privacy rights, which, although not a federally recognized privilege, would be a state recognized privilege in a federal action based on diversity jurisdiction. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States Dist. Court for the Cent. Dist. of Cal. (Dangerfield),* 7 F.3d 856, 859 (9th Cir.1993). In California, the right to privacy is set forth in Article I, Section I of the

---

8. Under Rule 23,

[a] district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). [¶] The district court must also find that at least one of the following three conditions are satisfied: (1) the prosecution of separate actions would cre-

ate a risk of: (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See Fed.R.Civ.P. 23(b). *Dukes,* 474 F.3d at 1224.

California Constitution. California courts have treated the right to privacy as a privilege in the discovery context, and, as such, have determined it is a right subject to invasion depending upon the circumstances. *See, e.g., Heller v. Norcal Mutual Ins. Co.,* 8 Cal.4th 30, 42–44, 32 Cal.Rptr.2d 200, 876 P.2d 999 (1994), *cert. denied,* 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994); *Hill v. National Collegiate Athletic Ass'n,* 7 Cal.4th 1, 37, 26 Cal.Rptr.2d 834, 857, 865 P.2d 633 (1994). Thus, "the privilege is subject to balancing the needs of the litigation with the sensitivity of the information/records sought." *Davis v. Leal,* 43 F.Supp.2d 1102, 1110 (E.D.Cal.1999); *see also Pioneer Elecs. v. Superior Court,* 40 Cal.4th 360, 371–75, 53 Cal.Rptr.3d 513, 520–24, 150 P.3d 198 (2007) (balancing privacy rights of putative class members with discovery rights of civil litigants).

██ Here, as discussed above, the Court has found plaintiff needs documents responsive to Category (3) document requests to pursue class action certification, as well as to prosecute this action, which seeks to enforce California's labor laws. *See,* e.g., *Dukes,* 474 F.3d at 1228–30. However, to assure that employees' personal information provided to plaintiff is protected, the Court is issuing a limited protective order to be complied with by the parties regarding documents responsive to Category (3) document requests, and that Order requires that any document with an employee's private information, such as a home address, a telephone number, and a social security number, if filed with the Clerk, shall have that information redacted.

██ Lastly, defendant objects to Category (3) document requests on the ground producing them would be "unduly burdensome," and to support this objection defendant has filed three declarations: the declaration of Mary Peltier, defendant's Director of Loss Prevention, which addresses the availability of documents pertaining to the sale of goods to defendant's employees; the declaration of Misty Braa, a human resources generalist, which addresses the personnel files of employees maintained by defendant; and the declaration of defendant's Vice–President and Controller, Vivian Gysler, which addresses reimbursements by employees to defendant.[9] In her declaration, Ms. Peltier states:

It is possible to generate electronic reports from which employee sales may be determined. However, such electronic reports only reflect sales made in the most recent six month period from the date that such a report is generated. [¶] 3. To track historical sales of Eddie Bauer merchandise to employees for a period longer than the immediately preceding six months, hard copy sales records must be gathered manually and reviewed by a live individual. Sales records are maintained both at [defendant's] corporate campus in Redmond, Washington, as well as off-site. These records are maintained by the company's accounting department. [¶] 4. All sales records ... are stored together. Therefore, the first step in gathering employee sales records is to identify and isolate these records from among all the sales made to any customer who is not an employee. [¶] 5. To do so, the sales records for all California stores since May 2005 ... must be examined. Although these records have been scanned electronically, they are scanned on computers that use multiple systems that do not function together. The computer systems are not capable of searching for particular employee names or associate ID numbers; the records can only be sorted by store and date range. *All* of the sales receipts for each California store for every day since May 2005 would have to be reviewed. [¶] 6. Each sales receipt must be reviewed individually to determine whether it relates to a sale to an employee. Each such record reflecting an

---

**9.** Category (3) document requests (Request nos. 6–10, 18–20, 23, 28, 32–34, 41–43 and 50–52) address putative class members' time worked, breaks, reimbursements, purchases, purchase costs, wage statements, reimbursement complaints, clothing shipment dates, wardrobe violations, discipline of wardrobe violations, complaints about wardrobe violations, meal breaks, missed meals, compensation for missed meals, rest breaks and compensation for missed rest breaks. The declarations filed by defendant address specific types of employment records defendant possesses, but it is not at all clear to the Court whether the records discussed in the declarations cover all the areas of inquiry set forth in Category (3) document requests.

employee sale would then be printed individually. [¶] 7. . . . I estimate that to gather the requested employee sales records would take approximately 600 man-hours. Peltier Decl. ¶¶ 2–7. Similarly, Ms. Braa states:

> [Defendant] currently has close to 27,000 employee files stored at its corporate campus. Personnel files with separation dates two years from the current employment year are stored off-site. The files are sorted alphabetically by employee name. Records for all employees in all states are retained together. [¶] 3. To gather any records of discipline would require a review of every employee file. . . . In my estimation, it would take at least 20 minutes to locate and review each employee's file, which would result in an estimated total of 600 man-hours to locate and review 1,800 employee files. [¶] 5. . . . For each employee wage statement retrieved and printed, approximately 5 minutes of time is required. . . . [T]here have been approximately 1,800 Eddie Bauer employees in California since May 2005. . . . [I]n each year of work, an employee receives 26 wage statements. Therefore, to print a single year of wage statements for each of the 1,800 employees would require approximately 3,900 hours of work, the equivalent of two years of work.

Braa Decl. ¶¶ 3–5. Finally, Ms. Gysler states:

> To generate documentation that reflect[s] each reimbursement to each employee, the first step would be to run a computer-based report to identify which employees received reimbursements in the first place. This step provides a list of the individuals for whom records exist. [¶] 4. The next step would be to search on the accounting system for reimbursement reports for each employee who has a record. . . . [¶] 5. If there are multiple reimbursement reports for an employee, each reimbursement report file must be opened and viewed separately, one at a time. . . . [¶] 6. To gather all reimbursements made to employees in

California between May 2005 and the present would require approximately 24 man-hours, three full dedicated work days.

Gysler Decl. ¶¶ 3–6.

Based on these declarations, defendant has shown it would be unduly burdensome to fully respond to Category (3) document requests—at least at this time. Having determined that documents responsive to Category (3) document requests seek relevant information regarding the putative class members that plaintiff require to pursue class action certification, and fully responding to these requests would be burdensome to defendant, the Court finds, nevertheless, plaintiff is entitled to responsive sample information. *See, e.g., Miller v. Air Line Pilots Ass'n,* 108 F.3d 1415, 1425 (D.C.Cir. 1997) ("[S]ome sort of sampling technique might well provide the appropriate balance between [plaintiff's] interest in data that is accessible and informative and [defendant's] concerns that the request be manageable."); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F.Supp.2d 224, 231–32 (W.D.N.Y.2006) (district court has authority to limit discovery in class action to a limit number of employer's stores or to a limited number of regions); *Smith v. Lowe's Home Centers, Inc.,* 236 F.R.D. 354, 357–58 (S.D.Ohio 2006) (limiting discovery in class action litigation against employer to a "statistically significant representative sampling" is appropriate under Fed.R.Civ.P. 26).

Anticipating the Court's approach, "[o]n February 22, 2007, [defendant's counsel] provided a specific, written proposal about a sampling of documents where [defendant] offered to provide time-clock records and wage statements from a sampling of 8 California stores for every fourth month from May 26, 2005[,] to the present." Spiewak Decl. ¶ 10:19–22, Exh. E. However, plaintiff's counsel never responded to this offer and never requested a different sampling. *Id.* at 3:24–26. Shockingly, plaintiff has not explained why the sampling proposed by defendant is inadequate or does not otherwise meet plaintiff's needs! [10] Since defendant's approach

---

**10.** In fact, it appears to the Court that plaintiff has not been diligently pursuing discovery from defendant but, rather, has decided to seek an extension of the date by which she must file her class certification motion. Such an approach is foolhardy. Further, the Court is dismayed that

seems reasonable to the Court, the Court accepts defendant's proposal regarding time-clock records and wage statements; provided, the sampling data addresses all the topics of Category (3) document requests. However, in the event plaintiff's experts are unable to devise some statistical analysis based on the sampling data, and opine they need data from all 1,800 putative class members, then plaintiff may renew her motion and the Court will consider expanding the discovery defendant must produce in response to the Category (3) document requests. At this time, the Court is of the opinion the discovery as limited herein should be sufficient to allow plaintiff to move for class certification, and, based on the Court's equitable powers under Fed.R.Civ.P. 1, discovery will be limited regarding the Category (3) document requests, as proposed by defendant.

## IV

Rule 37(a)(4) provides that if a motion compelling disclosure is granted the Court shall "pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4)(A).

 Here, the Court has, for the most part, granted plaintiff's motion to compel, finding defendant's objections to Category (1) and (2) document requests are not meritorious, but finding defendant's "unduly burdensome" objection to Category (3) document requests has merit. In light of defendant's

offer to provide "sample" discovery to plaintiff responsive to Category (3) document requests, and plaintiff's failure to accept that offer, the Court has determined to award plaintiff only 50% of the attorney's fees she seeks. The declaration of Gregory Yu establishes he spent 32 hours at $250.00 per hour preparing the motion to compel, and that he expects to spend an additional 6.5 hours on this matter. Yu Decl. ¶ 8. Plaintiff, thus, is entitled to reasonable attorney's fees in half the requested amount of $9,625.00, or $4,812.50.[11]

## ORDER

1. Plaintiff's motion to compel is granted, in part, and denied without prejudice, in part, as set forth herein, and defendant shall provide to plaintiff all documents responsive to Category (1) and (2) document requests (Request nos. 3–5, 11–14, 21–22, 24–27, 29–31, 35–40, 44–49 and 53) and documents of time-clock records and wage statements from eight California stores selected by **plaintiff** for every fourth month from May 26, 2005, responsive to Category (3) document requests (Request nos. 6–10, 18–20, 23, 28, 32–34, 41–43, and 50–52), no later than ten (10) days from the date of this Order.

2. Counsel for the parties are ordered to personally meet and confer no later than ten (10) days from the date of this Order to discuss a discovery plan for this case, which addresses, among other things, electronic discovery, modifications to the Federal Rules, depositions, and the like, and the proposed discovery plan shall be lodged no later than April 30, 2007.

3. Plaintiff's motion for sanctions is granted, in part, and defendant shall pay plaintiff attorney's fees in the amount of

the Joint Stipulation (and plaintiff's supplemental memorandum) does not address the recent amendments to the Federal Rules of Civil Procedure pertaining to electronic discovery, which went into effect December 1, 2006. In light of the declarations submitted by defendant, which establish that much of the information plaintiff seeks in its Category (3) document requests is available in electronic format, it appears to the Court that counsel for the parties, and particularly plaintiff, must address electronic discovery, which is vital for the class certification stage and

later the merits of this litigation. *See, e.g.,* Fed.R.Civ.P. 34(a) ("Any party may serve on any other party a request … to produce and permit the party making the request … to inspect, copy, test, or sample any designated documents or electronically stored information…."). Yet, the parties do not appear to have contemplated this.

11. The Court finds no basis under Rule 37(a)(4)(B) to award attorney's fees to defendant.

$4,812.50, no later than ten (10) days from the date of this Order.